## U. E. Ewing *v.* E. V. Burns' Adm'r.

**Equity—Duties of Commissioner.**

The duties of the commissioner and receiver of the Louisville Chancery Court are somewhat different from that of similar officers throughout the state, by reason of the rules and regulations of that court adopted in accordance with the provisions of the Code of Practice.

**Deposits in Court—Payment Into Court.**

Where without an order from the Louisville Chancery Court, the commissioner and receiver of that court received money due on notes executed at a decretal sale and deposited the same in the depository of the court, the money was in effect paid into the court, since where the money was placed in the court's depository to the credit of the court the court alone had jurisdiction over it.

**Deposits in Court—Deposits to Credit of Court.**

Where the commissioner and receiver of the Louisville Chancery Court received money due under decretal sale without order of the court and placed the money in the depository of the court to the court's credit, it became the money of the court.

**Equity—Liability of Sureties on Commissioner's Bond.**

Where by the negligence of the commissioner and receiver of the Louisville Chancery Court, the court without knowledge of a deposit and of the case to which the money belonged, improperly paid it out to other creditors of the court fund, the sureties on the commissioner's bond are liable for the loss.

APPEAL FROM LOUISVILLE CHANCERY COURT.

April 11, 1873.

OPINION BY JUDGE PRYOR:

The cases of *Burns v. Smith* and *Ewing v. Burns' Adm'r*, were argued as one case, have a direct connection with each other, and will be considered together.

Ewing, under a decree of the Louisville Chancery Court, purchased some real estate, the proceeds of which, after the payment of certain debts, belonged to the Burnses, who are the appellants in one case, and Burns' administrator, the appellee in the other. Thomas P. Smith at the time of the sale was the commissioner and receiver of the Louisville Chancery Court, and whilst acting as such, on the 1st of October, 1864, Ewing, the purchaser, paid to him the sum of

$3,013.85 in full, of the last note executed by him for the purchase money. No portion of the money seems ever to have been paid over to the Burnses by the receiver, and the administrator with the will annexed of the devisor Burns, through whom the present appellants in the case of *Burns v. Smith* derive their right to the money, by rule in the chancery court against Ewing, the purchaser, obtained an order requiring the latter to pay the money to him. Ewing insists that he cannot be compelled to pay this money a second time, as he has rightfully paid it to the receiver, and the chancery court had taken possession of it, and applied it to the payment of other judgments. The sureties of Smith, who are the appellees in the suit of *Burns v. Smith*, say that they are not liable, for the reason that there was no order of court authorizing the receiver to collect this money, or Ewing to pay it, and the court below taking this view of the case held Ewing responsible and released the sureties.

The duties of commissioner and receiver of the Louisville Chancery Court are somewhat different from that of other similar offices throughout the state, by reason of the rules and regulations of that court, adopted in accordance with the provisions of the code of practice, and the amendments thereto, organizing and regulating its jurisdiction. On the 14th of April, 1854, the following order was made by that court:

"It is held that a commissioner and receiver of this court be appointed, who is to be a deputy clerk of this court, but to attend only to the duties herein devolved, who shall receive and deposit in the bank of Kentucky (or such other place as the court may order), all moneys that are paid into court unless immediately ordered out. Said money should be placed in said bank (or rather depository) to the credit of the court by the commissioner, and said commissioner shall keep a plain account, showing what money is paid, what is deposited, and what is paid out otherwise. This account must also show, what money belongs to each case, what every person is entitled to, when it has been adjudged, and in all respects, shall have his accounts so complete and obvious that the amount and disposition of the money which shall have been paid in can be seen in a few minutes, and where money has heretofore been paid into court, and money is yet to be paid in on the same cause, he shall make an account of the money already paid, to be kept in connection with that which is to be paid. All money shall be withdrawn from the de-

pository, as the code of practice provides, by order of the court copied and his, the commissioner's, check issued. In the margin of the check, to be left in a check book, shall be stated the name of the cause in which it is drawn, the amount of money and also the date of the order in pursuance of which it is drawn and date of check. Said commissioner shall also take duplicate receipts for checks drawn or money paid out, and keep one in a book and the other shall be filed in the papers of the cause. He shall also return quarterly statements to be entered of record.

"Before he enters upon the duties of his office he shall enter into bond in the sum of $50,000.00, payable to the clerk of the Louisville Chancery Court for the benefit of all persons interested, to be subject to the order of the court, with good surety, and with condition to discharge faithfully and correctly the duties herein.

In pursuance of this rule Thomas P. Smith executed a bond with a portion of the appellees (in the case of *Burns v. Smith*) as his sureties on the 9th of September, 1862.

In the year 1868 Smith was reappointed commissioner, and executed a new bond with some of the appellees as his sureties thereon.

The object of this rule of 1854, the learned Chancellor in the court below, was to adopt a system under which the court funds could be safely received, kept and paid out.

It is made the duty of the receiver to comply with this rule of the court, and upon his failure to do so his sureties, as well as himself, are liable upon his bond. If the purchaser pays him money due upon notes executed at a decretal sale, without any order of court directing its payment, and the receiver converts it to his own use or fails to pay it into court, he (the purchaser) still remains liable for the money, nor can the latter look to the sureties on the official bond for indemnity, for the reason that the receiver had no legal right to receive it, and in doing so can only be regarded as the agent of the party paying it over to him. A receiver is not authorized to collect money due from a purchaser at a decretal sale, without any order of court directing its payment to him, or the receiver to collect it, and we are not prepared to adjudge that under the rules and regulations pertaining to the duties of receiver of the Louisville Chancery Court, that the official, even when the money is paid into court, has the power to withdraw it, or take charge of it without an order of court directing him to do so. This court will never sanction

a custom that is conceded to exist in that court, by which the receiver is permitted without an order of court to collect and receive from the purchasers at decretal sale the money whenever due, or whenever the purchaser sees proper to pay it over.

The money in this case was, however, in effect paid into court, when placed at the disposal of the Chancellor by the receiver. It is true that when it was paid by Ewing, the receiver had no right to collect it, and held it only as the agent of the former, but when this agent of Ewing, who was also receiver of the court, placed the money in the Louisville and Savings Institution, at that time the depository of the court, to the credit of the court, that tribunal alone had jurisdiction over it, and this money having been made a part of the courts fund, no one, not even the receiver or Ewing had longer any power over it, or right to withdraw it, without an order directing this custodian of the court's money to pay it over. After the Chancellor had acquired such control as this over the money and had in fact by the orders of the court, paid it out, it would, it seems to us, be a narrow view to take of the questions involved here, by adjudging that this money was never in court. In the other chancery courts of the state there is no depository of this character and the money when paid into court is directed to be loaned out or held by the receiver or commissioner for purposes of distribution. When the money was placed in the court's depository to the credit of the court, it became the money of the court, as much so, as if it had been paid, and placed upon the clerk's desk in the presence of the Chancellor during the session of court. Ewing had no right to withdraw it. The receiver had no power over it, and the court alone could direct its payment. It is conceded that where there is no order of court directing the payment of money, or acknowledging its receipt in open court, its reception by the receiver is no payment at all except as between the receiver and the party paying it, but when there is such a payment that gives the court control of the fund, although there may be no order of court directing its payment it presents an entirely different question.

It is urged, however, that this was not a payment of money into court because the Chancellor had no knowledge that such money had been placed in the depository to the credit of the court. Yet it might well be asked, why it was using this money in the payment of other creditors of the fund in entire ignorance of its having been

paid, and the response is for the reason that the receiver failed to comply with the requirements of the rule adopted in 1854, defining his duties, and by which he is required to show, in a book kept for that purpose, and subject to the inspection of the court, the amount of moneys paid into court, and the disposition made of the money in each case, and to make quarterly statements of his accounts to be entered of record.

With such a record of his acts the Chancellor, as well as the parties to this controversy, could have acertained the condition of this fund, to which the Burnses were 'entitled, the case to which it belonged, and as the result of the receiver's failure to do this the court has improperly paid out the money belonging to Burns' administrator to other creditors of the court fund, the whole fault being attributable to the negligence of the receiver in failing to comply with his duties. He had made it part of the court fund. It was his duty to know of what this fund consisted, and also to enable the court to know its condition by keeping a faithful record belonging to each case that was on deposit in the court's depository. He not only knew that this money paid by Ewing was a part of the fund, but also knew that the court, by its orders, was paying it out, and he and his sureties are all estopped from saying that it was never paid in court, that the money was paid by Ewing and placed to the credit of the court by the receiver clearly appears in the case of Burns' administrator against Ewing and the same facts are alleged in the petition by Burns against Smith and his sureties to which a demurrer was sustained by the court below.

We have no doubt that the money collected of Ewing and deposited by the receiver was placed to the credit of the court to supply the place of the moneys unaccounted for by this official and perhaps collected by him under a custom that ought not to be tolerated by the Chancellor. In order to prevent this use of the court's funds, the custodian of the money should be required to keep a separate account in each case, as the use of it by the bank would certainly be a compensation for this trouble. The violation of the receiver's bond having occurred prior to the 12th of August, 1868, there is no cause of action presented against the sureties on the bond as of that date. As to the sureties on the bond of the 9th of September, 1862, the demurrer to the petition as amended should have been overruled. The judgment of the court below against Ewing is reversed and the

cause remanded with directions to discharge the rule. The judgment of the court below sustaining the demurrer to the petition of Burns against the sureties on the bond dated 12th of August, 1868, is *affirmed*, and as to the sureties on the bond dated 9th of September, 1862, the judgment is *reversed* and the cause remanded with directions to overrule the demurrer to the petition as amended and for further proceedings consistent with this opinion. The sureties who are appellees in the bond of 1868 are J. A. Moore and John G. Simrall. They are entitled to their costs against the appellants, Geo. W. Burns, etc. The sureties, appellees, in the bond of 1862 are W. D. C. Ulipps, Robert J. Elliott, Chas. J. Meng, Henry McDowell and W. H. McWeather. The case is *reversed* as to these sureties and the appellants, Geo. W. Burns, etc., are entitled to their cost against them. Ewing recovers his cost against Burns' administrator.

*Barnet & Wright, Lindsay, for appellant.*

*W. S. Bodiley, G. & H. Barr, J. B. Cochran, for appellee.*